274 So.2d 671 (1973)
Glenda Denson RODGERS
v.
David Holder RODGERS.
No. 46966.
Supreme Court of Mississippi.
March 12, 1973.
*672 Donald M. Waits, Wiggins, for appellant.
Strickland & Clark, Wiggins, for appellee.
INZER, Justice:
This is an appeal by Glenda Denson Rodgers from a decree of the Chancery Court of Stone County modifying a divorce decree so as to award the custody of her two and a half year old child, Michael Shane Rodgers, to appellees, his paternal grandparents, Jack Rodgers and Eva Rodgers. We reverse and remand.
Appellant and David Holder Rodgers were divorced by a decree rendered on December 14, 1970. The child here in question was born to their marriage and his custody was awarded to appellant. The court affirmatively adjudicated that she was a fit, suitable and proper person to have the permanent custody of the child, and the father was ordered to pay $75 per month child support.
After the divorce decree appellant and her child lived in the home of her father and mother. Her father and mother separated, and appellant moved to Florida with her mother on March 3, 1971. Before leaving she went to the lawyer who had represented her husband in the divorce proceedings for advice about the child. She testified he advised her she could not carry the child out of the jurisdiction of the court, and it would be better to leave the child with the paternal grandparents until she could get located and get an order from the court allowing her to take the child to Florida. She also discussed the matter with the father of the child and decided to leave the child with the paternal grandparents.
Twenty-three days later on March 26, 1971, David Holder Rodgers and his parents filed a petition to modify the divorce decree with reference to the custody of the child. The petition alleged that the mother of the child was no longer a fit, suitable and proper person to have the custody of the child. Petitioners asked that paramount custody of the child be placed in Jack Rodgers and Eva Rodgers. No reason is set out in the petition why the father of the child did not ask for the custody, but the record reflects that he was on probation for possession of marijuana.
After a hearing on the petition, the chancellor found based upon a material change of circumstances, it was in the best interest of the child that the decree of December 14, 1970, should be modified so that the paramount custody of Michael Shane Rodgers be awarded to Jack and Eva Rodgers. A decree was entered in accordance with this finding, and the decree also required appellant and the father of the child to contribute $50 per month each for the support of the child, although the petition to modify the decree did not ask for support.
*673 The principal assignment of error is that the chancellor was manifestly incorrect and abused his discretion in modifying the initial decree of divorce thereby changing the custody of a child of tender years from its natural mother, the appellant, to its paternal grandparents, there being insufficient evidence to support or sustain such modification.
It is apparent from the pleadings that this is in reality a contest between the natural mother of the child and third parties, the paternal grandparents, and is governed by the law relative to such contest. In such contest it is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child. Simpson v. Rast, 258 So.2d 233 (Miss. 1972); Stegall v. Stegall, 151 Miss. 875, 119 So. 802 (1929); and Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900).
The petition seeking custody did not allege that appellant had abandoned her child and there is no proof in the record from which the chancellor could have found abandonment.
The real question in this case is whether there has been a clear showing that appellant is morally unfit to have the custody of her child. We think not. The chancellor did not find that appellant was morally unfit to have the custody of her child. The basis of his decision was that there had been a material change of circumstances and the best interests of the child would be served by placing the custody in the grandparents. The petition for modification alleged that appellant while living in Wiggins lived under circumstances as to be a bad moral influence on her child. It was alleged that she had numerous men visiting her during various hours of the night, and let one or more of them spend many nights in bed with her in the presence of the child. It was also alleged that the child had witnessed drinking and sex orgies, amounting to a bad influence on the child. This was denied by appellant in her answer to the petition. She propounded interrogatories to the petitioners seeking the particulars of these general allegations. These interrogatories were not answered and were quashed by the court prior to the hearing. There was no proof that appellant ever spent the night in bed with any man. Neither was there any proof that she was of an adulterous disposition. Appellees relied entirely upon circumstantial evidence to establish that she had been guilty of immoral relations with men. In order to establish adultery or fornication by circumstantial evidence, it is not sufficient that the evidence raise an inference of guilt, but it must be strong enough to lead to guilt as a satisfactory conclusion. In order to establish by circumstantial evidence that appellant was guilty of immoral relations with men as alleged in the petition, the burden was upon petitioners to show by clear and convincing evidence both the adulterous inclination and a reasonable opportunity to satisfy the inclination. The only substantial testimony in the record that indicates appellant might have been guilty of immoral conduct is the testimony of a lady who lived in the adjoining apartment. She testified that appellant and her mother often had beer parties at which men were present. On one occasion she attended one of the parties and stated that in her opinion the appellant was drunk on that occasion. She also testified that she had seen men go to the apartment at night and leave the next morning. This was denied by appellant, except that she admitted that one man, a truck driver, who had just gotten in from a trip, said he was tired and her mother told him to lie down for awhile. He was asleep when she retired to her room and went to bed. Her father testified that he came in early that next morning, and the man was on the bed fully clothed and *674 asleep, his wife and daughter were asleep in her bed. He did not attach anything morally wrong with this occurrence. Appellant admitted that she had dated men since the divorce, but denied that she had immoral relations with them. She also admitted that she had drunk beer on occasions in front of the child and that she and her husband had done this when they lived together. This testimony was not sufficient to establish the allegations of the petition. Appellant was only twenty years of age at the time of the hearing, and while it is apparent from the record that she has not been a model mother, she loves her child and wants his custody and we do not think the evidence in this record is sufficient to show that she is an unfit person to have his custody. Especially is this true since the child is of tender years and needs the care and love of his mother. In so holding we do not put our stamp of approval on all of her conduct.
Appellees seem to contend that the chancellor was justified in modifying the decree since appellant has moved to Florida and plans to carry the child out of the jurisdiction of the court. There was nothing in the decree awarding her custody that prevented her from her carrying the child out of the jurisdiction of the court. Appellant testified she was gainfully employed in Florida and had rented an apartment in a good neighborhood to which to carry the child. She also testified that there was a day nursery where she could leave the child while she worked. Appellant cites and relies upon Drew v. Drew, 249 Miss. 26, 162 So.2d 652 (1964), wherein we affirmed a decree denying the father of two children their custody in the absence of any showing that he was morally unfit or that he had abandoned them. This was a contest between the father, a non-resident, and the mother of the children over their custody. The mother had the children in this state and wanted to keep them, but the court found her unfit. The court further found that it was in the best interest of the children that neither parent have their custody and placed them in the custody of Palmer Orphanage with the parents required to support them. We have considered and construed Drew in at least three cases; they are: Daniels v. Lewellen, 254 So.2d 907 (Miss. 1971); Newman v. Sample, 205 So.2d 650 (Miss. 1968); and Mitchell v. Powell, 253 Miss. 867, 179 So.2d 811 (1965). It is apparent from what we said in these cases that what we actually did in Drew was to approve a temporary arrangement made by the chancellor to see that the children were properly cared for pending a proper showing by one of the parents that he had a proper and suitable place to carry the children and that he was in a position to properly care for them. We have pointed out that the decision in Drew was limited to the facts in that case and did not change the rule with reference to the right of a parent to the custody of his or her child over that of a third person. We find no merit in the contention that the chancellor was justified in depriving appellant of the custody of her child because she was going to carry the child out of the jurisdiction of the court. However, under such circumstances the court can retain jurisdiction by requiring her to post a bond with sufficient surety to insure the child's return when ordered to the jurisdiction of the court.
We hold that the chancellor was manifestly in error in modifying the decree so as to award the custody of the child to the paternal grandparents. Therefore, the decree modifying the divorce decree with reference to the custody of the child is reversed, and the original decree is reinstated. The case will be remanded in order that the court, if deemed necessary, may require appellant to enter into a bond to assure the retention by the court of jurisdiction of the child.
Reversed and remanded.
RODGERS, P.J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.