## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-00655-COA

EMMA BELL                                                           APPELLANT

v.

SIDNEY STEVENSON, JR.                                                APPELLEE

DATE OF JUDGMENT:              03/19/2013
TRIAL JUDGE:                   HON. EDWARD C. FENWICK
COURT FROM WHICH APPEALED:     LEFLORE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        EMMA BELL (PRO SE)
ATTORNEY FOR APPELLEE:         THOMAS M. FLANAGAN JR.
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       DIVORCE GRANTED, ALIMONY
                               AWARDED, AND MARITAL ASSETS
                               DIVIDED
DISPOSITION:                   AFFIRMED – 02/17/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., FAIR AND JAMES, JJ.

### JAMES, J., FOR THE COURT:

¶1.     This case arises out of a divorce action filed by Emma Bell against Sidney Stevenson

Jr.  A consent agreement was entered reserving two issues for trial: alimony and equitable

division of the retirement and savings accounts.  The trial court initially awarded Bell $400

per month for forty-eight months as a part of property division, but no alimony was awarded.

Bell filed several post-trial motions seeking to set aside the judgement of divorce.  The

judgment of divorce was eventually set aside, and a hearing was held on the two issues

previously set aside.  Stevenson was ordered to pay $500 per month in rehabilitative alimony

for thirty-six consecutive months, and an amended judgment of divorce was entered. On appeal, Bell raises the following issues:

I. Whether the trial court erred in its ruling where it considered evidence which was not a part of the issues reserved for the court in the consent decree and which the court had previously set aside in a prior order;

II. Whether the trial court erred in ordering Bell to return certain electronic materials to Stevenson and forbidding discussion of their existence and what was on the materials even though Bell was served with a search warrant and turned the materials over to the attorney general's office;

III. Whether the trial erred by denying plaintiff's motion to compel discovery;

IV. Whether the trial court erred by failing to properly divide the parties' marital assets and retirement accounts;

V. Whether the trial court erred by failing to properly determine the correct amount of alimony to be paid from the husband to the wife;

VI. Whether the trial court erred by failing to consider the husband's additional income that was not disclosed on his Uniform Chancery Court Rule 8.05 statement; and

VII. Whether the trial court erred in removing photographs that were properly admitted into evidence by the court.

**FACTS**

¶2. Bell and Stevenson were married in September 1999. They separated in May 2007, and Bell filed for divorce the same month. A consent to entry of divorce on the ground of irreconcilable differences was filed on March 19, 2008. The consent to divorce was signed by both parties. The consent permitted the court to decide two issues: the amount of alimony to be paid, if any, from Stevenson to Bell and the equitable division of any savings and retirement accounts. On March 21, 2008, a judgment of divorce was entered by the court.

2

In the judgment, Stevenson was ordered to pay Bell $400 per month for forty-eight months as equitable distribution of property; no alimony was awarded.

¶3.     Bell retained new counsel and filed several post-divorce motions seeking to set aside the final judgment. Judges Jon M. Barnwell and William Willard recused themselves on October 29, 2008. The Mississippi Supreme Court appointed Judge Edward Fenwick to preside over the proceedings. A hearing was held on October 27, 2009, and the order was entered in May 2011 setting the previous judgment of divorce aside. The order preserved the issues of alimony and equitable division of retirement and savings accounts.

¶4.     On October 24, 2012, a hearing was held on the issues previously reserved by the trial court. The court ordered Stevenson to pay Bell $500 per month for thirty-six months as rehabilitative alimony. The trial court did not divide Stevenson's and Bell's retirement and savings accounts. An amended judgment of divorce was entered on March 19, 2013.

¶5.     Bell appeals. Finding no error, we affirm.

## STANDARD OF REVIEW

¶6.     "We afford chancellors much discretion in our review of domestic-relations cases. This Court will not disturb a chancellor's findings unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard." *Larson v. Larson,* 122 So. 3d 1213, 1215 (¶3) (Miss. Ct. App. 2013).

## DISCUSSION

   I.     **Whether the trial court erred in its ruling where it considered evidence which was not a part of the issues reserved for the court in the consent decree and which the court had previously set aside in a prior order.**

3

¶7. Bell asserts that she did not agree to the order entered by the trial court and, as a result, the amended judgment of divorce should not have been granted. Bell also recites several facts that are not pertinent to the case.

¶8. Bell and Stevenson signed the consent agreement, but the order was signed only by their attorneys. A consent agreement for an irreconcilable-differences divorce must contain the following elements: it must "(1) be in writing, (2) be signed by both parties, (3) state that the parties voluntarily consent to have the court decide issues upon which they cannot agree, (4) specifically set forth those issues upon which the parties cannot agree, and (5) state that the parties understand that the court's decision will be binding." *McNeese v. McNeese,* 119 So. 3d 264, 270 (¶14) (Miss. 2013).

¶9. Bell takes issue with the order entered by the court setting the judgment of divorce aside only as it pertains to the ruling on alimony and equitable division of savings and retirement accounts. Bell's consent was not required for the order.[1] The original consent agreement complied with the statute because Bell and Stevenson signed it. The authority cited by Bell does not support her argument. Therefore, this issue is without merit.

**II.     Whether the trial court erred in ordering Bell to return certain electronic materials to Stevenson and forbidding discussion of their existence and what was on the materials even though Bell was served with a search warrant and turned the materials over to the attorney general's office.**

¶10. Bell's argument for the second assignment of error is unclear. Bell restates facts

---

[1] According to Uniform Chancery Court Rule 5.03, consent judgments must be signed by counsel for both parties. The chancellor may require both parties to sign the judgment as well.

discussed in the first issue. It should be noted, however, that Bell stated in open court that she understood that the only two issues to be litigated were the alimony and equitable division of the savings and retirement accounts. The remainder of the agreement was incorporated into the final judgment and remained in full force and effect. Also, during the course of the proceedings, Bell retained three separate attorneys and now appeals pro se. The Supreme Court of Mississippi has previously stated that the appellate court "is not required to address any issue that is not supported by reasons and authority." *In re B.S.,* 105 So. 3d 1120, 1122 (¶9) (Miss. 2013). Again, the authority cited does not support Bell's argument. Therefore, this issue is without merit.

**III.** **Whether the trial court erred by denying Bell's motion to compel discovery.**

¶11. Bell contends that the trial court limited her discovery before trial by denying her motion to compel discovery. As a result, Bell argues that she was unable to determine Stevenson's accurate income from his job and side work as a photographer.

¶12. Bell issued no requests for discovery until the post-trial interrogatories submitted by Bell's third attorney. Bell submitted her discovery well after the initial period for discovery expired. Additionally, the information Bell sought was contained in the Rule 8.05 financial-disclosure form. "This Court may only reverse the trial judge's ruling regarding discovery if it finds that there has been an abuse of discretion." *Boutwell v. Boutwell,* 829 So. 2d 1216, 1223 (¶30) (Miss. 2002). Further, "[o]ur trial judges are afforded considerable discretion in managing the pretrial discovery process in their courts. And they are given wide latitude in fashioning remedies for discovery violations." *Vaughn v. Vaughn,* 56 So. 3d 1283, 1286 (¶7)

5

(Miss. Ct. App. 2011). It was within the trial court's discretion to deny Bell's motion to compel discovery. The trial court did not abuse its discretion.

**IV. Whether the trial court erred by failing to properly divide the parties' marital assets and retirement accounts.**

¶13. Bell argues that Stevenson's retirement account should have been equitably divided between both parties because of the disparity between the accounts. Bell specifically argues that because the marital home went into foreclosure in 2008, four years before the divorce trial, it should not be considered in the proceedings. Bell also asserts that Stevenson brings home about $3,773 each month, not the $2,190 that was reported to the court.

¶14. "The distribution of marital assets in a divorce will be affirmed if 'it is supported by substantial credible evidence.'" *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009). The Supreme Court of Mississippi has further held that "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley v. Hemsley,* 639 So. 2d 909, 914 (Miss. 1994). It is well settled that the guidelines set out in *Ferguson v. Ferguson,* 639 So. 2d 921, 928 (Miss. 1994), are used to determine the equitable division of marital property. The *Ferguson* factors are as follows:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
>> a. Direct or indirect economic contribution to the acquisition of the property;
>>
>> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time

6

spent on family duties and duration of the marriage; and

      c.    Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Id.*

¶15. The trial court conducted a detailed *Ferguson* analysis in its opinion on the equitable division of savings and retirement accounts. It should be noted, however, that "[a]n equitable division of property does not necessarily mean an equal division of property. Fairness is the prevailing guideline in marital division." *Lowrey,* 25 So. 3d at 285 (¶14). The court only addressed the savings and retirement accounts that were in the order entered prior to trial. Here, the trial court ultimately concluded that the most equitable outcome would be to let

Bell and Stevenson keep their retirement accounts and order Stevenson to pay $500 per month in rehabilitative alimony for thirty-six months.

¶16. It is well settled that "[c]hancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Smith v. Smith,* 90 So. 3d 1259, 1261 (¶7) (Miss. Ct. App. 2011). Also, "the goal as it pertains to equitable division is 'a fair division of marital property based on the facts of each case.'" *Jenkins v. Jenkins,* 67 So. 3d 5, 12 (¶13) (Miss. Ct. App. 2011) (citation omitted). The trial court carefully considered dividing the accounts and the effects of that division. We find no error in the court's reasoning; therefore, this issue is without merit.

**V. Whether the trial court erred by failing to properly determine the correct amount of alimony to be paid from husband to wife.**

¶17. Bell argues that the alimony awarded by the court is insufficient because the trial court did not divide Stevenson's retirement account. Bell contends that she is still economically disadvantaged.

¶18. The supreme court has held "[i]n the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." *Armstrong v. Armstrong,* 618 So. 2d 1278, 1281 (Miss. 1993). The factors considered by the chancellor when determining alimony are as follows:

   1. The income and expenses of the parties;

   2. The health and earning capacities of the parties;

8

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Id.*

¶19. Here, the chancellor made an on-the-record finding on all the *Armstrong* factors, and recognized a financial disparity between Bell and Stevenson. Stevenson earns $63,000 a year, brings home $2,190 per month, and spends approximately $3,705 per month. Stevenson's federal retirement was $8,785, and his Thrift Savings Plan (TSP) account contained $158,950. At the time of the chancellor's opinion, Stevenson owed approximately $20,400 in credit-card debt. Bell earns $32,000 a year, brings home $1,899 per month, and spends $2,890 per month. Bell's PERS account's value was $46,587, and Bell owed $17,115 in credit-card debt at the time of the opinion. The marriage lasted six and a half years, which the trial court considered to be a short-term marriage. Again, the trial court took into

9

consideration Bell's allowing the marital home awarded to her to go into foreclosure.

¶20. "Once the marital property is equitably distributed, 'if there are sufficient assets to provide for both parties, then there is no more to be done. But if there is a deficit for one party, the chancellor should consider alimony." *Coggins v. Coggins,* 132 So. 3d 636, 640 (¶9) (Miss. Ct. App. 2014). The trial court acknowledged that a disparity existed after allowing both parties to keep their retirement accounts and stated, "there are not sufficient assets to achieve financial fairness and balance by property division." The trial court has broad discretion over equitable remedies including alimony. *Ward v. Ward,* 131 So. 3d 1244, 1248 (¶10) (Miss. Ct. App. 2014). There is substantial evidence to support the trial court's decision; therefore, this issue is without merit.

### VI. Whether the trial court erred by failing to consider the husband's additional income that was not disclosed on his Rule 8.05 statement.

¶21. Bell argues that Stevenson receives additional income from a side photography business. Bell also contends that her testimony stating that he has a photography business and earns anywhere from $250 to $300 per weekend is relevant evidence and should have been considered by the trial court.

¶22. Uniform Chancery Court Rule 8.05 requires each party in a domestic-relations case involving "economic issues and/or property division" to file a financial statement with the court. Intentionally filing a fraudulent financial statement is a clear violation of the rule. Fraud, however, must be affirmatively proven. *Rogers v. Rogers,* 94 So. 3d 1258, 1263 (¶18) (Miss. Ct. App. 2012). Also, "fraud must be proved with clear and convincing evidence." *Id.* at 1264 (¶18). Here, Bell merely asserts that Stevenson has additional income from his

work as a photographer and that his reported income is incorrect. There is no evidence in the record that Stevenson falsely reported his income or has additional income. Accordingly, this issue is without merit.

### VII. Whether the trial court erred in removing photographs that were properly admitted into evidence by the court.

¶23. Bell argues that the photos excluded by the trial court were relevant evidence and should have been admitted into evidence. Bell also asserts that the photos were essential to the alimony and equitable-division issues in the case.

¶24. The admission or exclusion of evidence is within the discretion of the trial judge. *Miss. Transp. Comm'n v. Fires,* 693 So. 2d 917, 920 (Miss. 1997). The trial court admitted several photographs introduced by Bell during her redirect examination. Stevenson objected, but Bell argued that Stevenson "opened the door" to a particular line of questioning, and the trial court allowed Bell to continue. However, in the chancery court's opinion, it reversed its decision and excluded the photographs. The chancery court stated:

> After giving this matter considerable thought, the Court is of the opinion that it was clearly error to allow exhibits 9, 10, 11, and 12 to be introduced. In the first place, they were introduced through Bell on redirect. This was not an issue Stevenson's attorney had gone into in cross-examination. Counsel for Bell argued that counsel opposite had "opened the door" by bringing this out during cross-examination. The court's memory of this part of the testimony was that she volunteered this information in an answer that was non-responsive to the question asked. Stevenson's attorney did not ask any follow up questions on the issue and did not challenge her veracity on the matter. Secondly, and more importantly, by introducing the photographs on redirect, Stevenson was deprived of the right to cross-examine the witness about the documents. In effect he was denied the fundamental due process right of confrontation so vital to the truth finding procedure that a trial is supposed to be.

¶25. "The scope of redirect examination, while largely within the discretion of the trial

11

court, is limited to matters brought out during cross-examination. Also we will not disturb a trial court's ruling on matters pertaining to re-direct examination unless there has been a clear abuse of discretion." *Lloyd v. State,* 755 So. 2d 12, 14 (¶9) (Miss. Ct. App. 1999). The trial court did not err in excluding the photographs; therefore, this issue is without merit.

## CONCLUSION

¶26.   Bell and Stevenson reserved two issues to be decided by the court: (1) equitable division of retirement and savings accounts and (2) alimony. The trial court conducted a thorough analysis of both the *Ferguson* and *Armstrong* factors and decided to award rehabilitative alimony and keep the retirement accounts separate. The issues Bell raised on appeal are without merit; therefore, we affirm the decision of the trial court.

¶27.   **THE JUDGMENT OF THE LEFLORE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING AND GRIFFIS, P.JJ., ROBERTS, MAXWELL AND FAIR, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**